72

**UNSEALED**
6/28/12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### McALLEN DIVISION

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | § | | |
| | § | | |
| **v.** | § | Criminal No. | **M-12-1036** |
| | § | | |
| **MARCELO HERRERA** | § | | |
| **CARLA CANTU HERRERA** | § | | United States District Court |
| **RAMON DE LA GARZA** | § | | Southern District of Texas |
| **BEATRIZ RAMOS** | § | | FILED |

Adriana (7-3-12 cr)

United States District Court
Southern District of Texas
FILED

JUN 2 6 2012

David J. Bradley, Clerk

### SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### THE MEDICARE PROGRAM

1.     The Medicare Program (Medicare) was a federal health care benefit program signed into law in 1965, as Title XVIII of the Social Security Act, for the purpose of providing federal funds to pay for certain specified medical benefits, items, or services (hereinafter referred to collectively as "services") to individuals who were over the age of 65, disabled, or suffering from kidney failure or long term kidney disease, and who were qualified and enrolled as Medicare beneficiaries. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), formerly known as the Health Care Financing Administration (HCFA), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, § 24(b).

2.     Medicare assigned every person qualified and enrolled as a Medicare beneficiary a unique personal Medicare identification number known as a Health Insurance Claim Number, often referred to as a (HICN).

Case 7-12-cr-1036-4     Document 1     Filed in TXSD on 06/26/2012     Page 2 of 22

3.     Medicare funds were intended to pay for services furnished to Medicare beneficiaries by enrolled Medicare suppliers when such services were supplied in accordance with all of the rules regulations and laws which governed the Medicare program.  Covered services included medical services and procedures furnished by physicians and other health care professionals in their offices; as well as certain products, supplies, and services used outside a physician's office such as wheelchairs, hospital beds and mattresses, diabetic and incontinent supplies, which were commonly known as Durable Medical Equipment (DME).

4.     A person or entity that desired to become a Medicare supplier was required to submit an application and sign an agreement which included a promise to comply with all Medicare related laws and regulations.  Medicare assigned a unique "supplier number" to each approved Medicare supplier.  A person or entity with a Medicare supplier number could file claims, also known as bills, with Medicare to obtain reimbursement for covered services which were provided to Medicare beneficiaries in accordance with the rules, regulations, and laws pertaining to the Medicare program. Medicare had special rules for DME suppliers.  The Medicare Provider Manual, bulletins, and newsletters distributed and available to all Medicare suppliers and to the public contained the rules and regulations pertaining to Medicare-covered services and instructions on how to appropriately bill for services provided to Medicare beneficiaries.

5.     Medicare would only pay reimbursement for covered services, including DME, which were prescribed by the beneficiary's physician, and were medically necessary to the treatment of the beneficiary's illness, injury, or condition. In addition, for wheelchairs, payment was excluded by law if the supplier did not have a written order from the beneficiary's physician prior to delivery of the chair and prior to billing Medicare for the item.  In order to receive reimbursement from Medicare for services to beneficiaries, suppliers submitted or caused the submission of claims to Medicare,

Case 7-12-cr-1036-4   Document 1   Filed in TXSD on 06/26/2012   Page 3 of 22

either directly or through a billing company. Claims could be submitted either in paper form or electronically. Suppliers could only submit claims on, or after, the "date of service" to the beneficiary. For DME, the date of service referred to the date on which the DME was delivered to, and accepted by, the beneficiary.

6.     DME suppliers were required to submit their Medicare claims on a standardized form commonly referred to as a "Form 1500", "HCF 1500", or "CMS 1500." Certain specific information was required to be on each claim form, including but not limited to the following:

    (a)     the beneficiary's name and unique personal Medicare identification number known as a Health Insurance Claim Number (HICN);

    (b)     the date of service;

    (c)     the specific uniform code for the diagnosis of, or nature of, the Medicare beneficiary's illness, injury, or condition;

    (d)     the specific uniform national Healthcare Common Procedure Coding System (HCPCS) code, and modifiers, established by CMS to define and describe the DME for which payment was sought;

    (e)     the name and unique Physician Identification Number (UPIN) or National Provider Identifier (NPI) of the physician who prescribed or ordered the DME for which payment was sought; and

    (f)     all applicable modifier codes.

7.     Modifier codes were sometimes required to provide additional information regarding the DME, such as when the information provided by a HCPCS code descriptor needed to be supplemented to identify specific circumstances that applied to the DME. For example, a "UE" modifier was used when the item identified by a HCPCS code was used equipment. A "NU" modifier was used for new equipment. The "KX" modifier was used by providers to represent to

Medicare that the specific required documentation, such as the written physician order as described in paragraph 5 above, was on file in the patient's medical record maintained by the Medicare supplier.

8.    CMS contracted with various Durable Medical Equipment Regional Carriers ("DMERCs") to provide a number of administrative functions for Medicare including processing and paying suppliers' claims for reimbursement. The DMERC that processed and paid Medicare DME claims from DME suppliers in Texas was Cigna Government Services (CIGNA). Medicare DME suppliers in Texas were required to submit their Medicare bills or claims to CIGNA in Nashville, Tennessee. Claims from Texas Medicare DME suppliers were processed in and paid by CIGNA in Nashville, Tennessee. Although providers may have sometimes submitted claims in groups for efficiency, every claim was considered individually. Claims to Medicare were paid either by paper checks delivered by the United States Postal Service or by wire or radio transmissions, in interstate commerce, in transactions known as electronic funds transfers.

9.    For each claim submitted, the Medicare DME supplier certified, among other things, that: (a) the information on the claim form was true, accurate, and complete; (b) the services had been provided to the Medicare beneficiary; and (c) the services listed on the claim were medically indicated and necessary to the health of the Medicare beneficiary.

## THE MEDICAID PROGRAM

10.    The federal Medical Assistance program (commonly known as the Medicaid program) was a federal health care benefit program signed into law in 1965, as Title XIX of the Social Security Act, for the purpose of providing joint state and federal funds to pay for medical benefits items or services (hereinafter referred to jointly as "services") to individuals of low income who were qualified and enrolled as Medicaid beneficiaries. States desiring to participate in, and

receive funding from, the federal Medicaid program were required to develop a "state plan" for medical assistance and obtain approval of the plan from the United States Department of Health and Human Services. Upon approval of its state plan, each individual state administered its own Medicaid program, subject to the requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services and all other applicable state and federal laws.

11.     The Texas Medical Assistance Program also know as the Texas Medicaid program (Texas Medicaid) was implemented under the provisions of Title XIX of the federal Social Security Act and Chapter 32 of the Texas Human Resources Code for the purpose of providing joint state and federal funds to pay for medical benefits items or services (hereinafter referred to jointly as "services") to individuals of low income who were qualified and enrolled as Texas Medicaid beneficiaries. Texas Medicaid was a "health care benefit program" as defined by Title 18, United States Code, § 24(b).

12.     Texas Medicaid assigned every person qualified and enrolled as a Texas Medicaid beneficiary a unique personal Texas Medicaid identification number known as a Patient Control Number, often referred to as a (PCN).

13.     The Texas governmental agency known as the Health and Human Services Commission (HHSC) was the single state Medicaid agency in Texas responsible, subject to oversight by the federal government, for administering the Texas Medicaid program at the state level. Federal funding was only available to the Texas Medicaid program as long as the Texas Medicaid program complied with the terms and requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services and all other applicable state and federal laws, and with the rules and regulations, pertaining to Texas Medicaid, established by both the federal government and the State of Texas.

5

14.     The Texas Medicaid Healthcare Partnership (TMHP) was under contract with HHSC to provide certain administrative functions such as provider enrollment, claims processing and payment, and publishing the Texas Medicaid Provider Procedures Manual on behalf of HHSC. The Texas Medicaid Provider Procedures Manual, bulletins, and banner messages were distributed and available to all Texas Medicaid providers and contained the rules and regulations pertaining to Medicaid-covered services, and instructions on how to appropriately bill for services provided to Medicaid beneficiaries.  Texas Medicaid Provider Procedures Manual was also available to the public via the internet.

15.     Texas Medicaid funds were intended to pay for covered services furnished to Texas Medicaid beneficiaries, by enrolled Texas Medicaid providers, when such services were provided in accordance with all of the rules, regulations, and laws which governed Texas Medicaid; and for "crossover" claims described in paragraph 17 below, when the services were also provided in accordance with all of the rules, regulations, and laws which governed Medicare.  Covered Texas Medicaid services included medical services and procedures furnished by physicians and other health care professionals in their offices; as well as certain products, supplies, and services used outside a physician's office such as wheelchairs, hospital beds and mattresses, diabetic and incontinent supplies, which were commonly known as Durable Medical Equipment (DME).

16.     A person or entity that desired to become a Texas Medicaid provider was required to submit an application and sign an agreement which included a promise to comply with all Texas Medicaid related laws and regulations.  Texas Medicaid assigned a unique "provider number" to each approved Texas Medicaid provider.  A person or entity with a Texas Medicaid provider number could file claims, also known as bills, with Texas Medicaid to obtain reimbursement for covered services which were provided to Texas Medicaid beneficiaries in accordance with the rules,

regulations, and laws pertaining to the Medicaid program; and for crossover claims described in paragraph 17 below, when the services were also provided in accordance with all of the rules, regulations, and laws which governed Medicare.  Texas Medicaid had special rules for DME providers.

17.     An individual who was a beneficiary under both Medicare and Texas Medicaid was sometimes referred to as a "dual-eligible beneficiary."  When a service provided to a dual-eligible beneficiary was a benefit of both Medicare and Texas Medicaid, the supplier was required to submit the claim to Medicare first.  After Medicare paid the allowed amount of the claim (usually 80 percent), the remaining balance was automatically submitted to Texas Medicaid for payment as what was generally referred to as a "crossover claim."  Texas Medicaid paid crossover claims only if Medicare had paid first, and only if the provider had followed all of the rules, regulations, and laws which governed both Medicare, and Texas Medicaid.

18.     Texas Medicaid would only pay reimbursement for services, including DME, which were prescribed by the beneficiary's physician and were medically necessary to the treatment of the beneficiary's illness, injury, or condition.  In addition to the Medicare requirements for payments for DME described in paragraph 5 above, Texas Medicaid required that a completed "Home Health Services (Title XIX) Durable Medical Equipment (DME)/Medical Supplies Physician Order Form" prescribing the DME and/or supplies be signed and dated by a physician familiar with the Texas Medicaid beneficiary.  Texas Medicaid also required that said form had to be maintained by the DME provider and the prescribing physician in the beneficiary's medical record. In addition, Texas Medicaid required that, before submitting a claim for payment, the DME provider had to obtain a "DME Certification and Receipt Form" from the Texas Medicaid beneficiary.  The DME Certification and Receipt Form was to be signed by both the Texas Medicaid beneficiary and the

DME provider certifying the date that the DME was received by the Texas Medicaid beneficiary and that the DME had been prescribed by a physician, received by the Texas Medicaid beneficiary, properly fitted, and met the Texas Medicaid beneficiary's needs.  The DME provider was required to keep that form on file in the patient's medical record.

19.     To receive reimbursement from Texas Medicaid for services to beneficiaries, providers submitted or caused the submission of claims to Texas Medicaid, either directly or through a billing company.  Claims could be submitted either in paper form or electronically.  Providers could only submit claims on or after the "date of service" to the beneficiary.  For DME, the date of service referred to the date on which the DME was delivered to, and accepted by, the Texas Medicaid beneficiary.

20.     Texas DME suppliers were required to submit their Texas Medicaid claims on a standardized form commonly referred to as a "Form1500", "HCF 1500", or "CMS 1500." Certain specific information was required to be on each claim form, including but not limited to the following:

> (a)     the beneficiary's name and unique personal Texas Medicaid identification number known as a Patient Control Number (PCN);
>
> (b)     the date of service;
>
> (c)     the specific uniform code for the diagnosis of, or nature of, the Texas Medicaid beneficiary's illness, injury, or condition;
>
> (d)     the specific uniform national HCPCS code, and modifiers, established by CMS to define and describe the DME for which payment was sought;
>
> (e)     the name and unique Physician Identification Number (UPIN) or National Provider Identifier (NPI) of the physician who prescribed or ordered the DME for which payment was sought; and

8

(f)      all applicable modifier codes.

21.      Modifier codes were sometimes required to provide additional information regarding the DME, such as when the information provided by a HCPCS code descriptor needed to be supplemented to identify specific circumstances that applied to the DME. For example, a "UE" modifier was used when the item identified by a HCPCS code was used equipment.   A "NU" modifier was used for new equipment. The "KX" modifier was used by providers to represent to Texas Medicaid that the specific required documentation, such as the written physician order as described in paragraph 5 above, and the "Home Health Services (Title XIX) Durable Medical Equipment (DME)/Medical Supplies Physician Order Form" and the "DME Certification and Receipt Form" described in paragraph 18 above, were on file in the patient's medical record maintained by the Texas Medicaid provider.

22.      Except for crossover claims which went first to Medicare and, after payment, were sent by Medicare to Texas Medicaid, DME providers in Texas were required to submit their Texas Medicaid bills or claims to TMHP. Although providers may have sometimes submitted claims in groups for efficiency, every claim was considered individually. Claims to Texas Medicaid were paid either by paper check delivered by the United States Postal Service or by wire or radio transmissions, in transactions known as electronic funds transfers.

23.      For each claim submitted, the Medicaid DME provider certified, among other things, that: (a) the information on the claim form was true, accurate, and complete; (b) the services had been provided to the Texas Medicaid beneficiary; and (c) the services listed on the claim were medically indicated and necessary to the health of the Texas Medicaid beneficiary.

24.      Medicare and Texas Medicaid rules excluded some types of DME. In addition,

Medicare and Medicaid placed monthly or yearly limits on some DME. For example, various rules limited the quantity of incontinent supplies that were allowed to any one beneficiary each month; other rules limited beneficiaries to one wheel chair every 5 years unless the wheelchair was lost, stolen or broken.

## RGV DME and THE DEFENDANTS

25. Defendant **MARCELO HERRERA**, was a resident of Hidalgo County, Texas, and was the owner and operator of RGV DME, a sole proprietorship which had a business addresses in and around McAllen, Texas. **MARCELO HERRERA,** doing business as RGV DME**,** was enrolled as a DME supplier in Medicare, and as a DME provider in Texas Medicaid. At times RGV DME was referred to as RGV DME , LLC, RGV Medical Equipment and Supply, LLC, Marcelo Herrera DBA RGV DME or RGV DME DBA Marcelo Herrera. The business will be referred to as RGV DME. RGV DME ostensibly provided DME, including power wheelchairs, hospital beds, mattresses, diabetic supplies, and incontinence supplies, to Medicare and Texas Medicaid beneficiaries and others. Defendant **MARCELO HERRERA** was the organizer, leader, and director of the activities of RGV DME.

26. Defendant **CARLA CANTU HERRERA** was a resident of Hidalgo County, Texas, and was the wife of defendant **MARCELO HERRERA**. Defendant **CARLA CANTU HERRERA** aided and assisted the operation of RGV DME, including holding the position of Marketing Director; supervising the office manager(s) of RGV DME; providing training, and or instruction to RGV DME employees; and being in charge of the business when her husband defendant **MARCELO HERRERA** was not present, or was otherwise unavailable, to direct the employees of RGV DME.

10

Case 7-12-cr-1036-4    Document 1    Filed in TXSD on 06/26/2012    Page 11 of 22

27.      Defendant **RAMON DE LA GARZA**, was a resident of Hidalgo County, Texas, and was an employee of RGV DME. Defendant **RAMON DE LA GARZA** was responsible for billing Medicare and Texas Medicaid for medical supplies, such as DME, allegedly provided to Medicare and Texas Medicaid beneficiaries, and otherwise aided and assisted the operation of RGV DME.

28.      Defendant **BEATRIZ RAMOS**, was a resident of Hidalgo County, Texas, and was an employee of RGV DME. Defendant **BEATRIZ RAMOS** was the office manger for RGV DME and was also responsible for billing Medicare and Texas Medicaid for medical supplies, such as DME, allegedly provided to Medicare and Texas Medicaid beneficiaries, and otherwise aided and assisted the operation of RGV DME.

### THE AGREEMENT AND SCHEME TO DEFRAUD

29.      During the time frame beginning in or around January 2004, and continuing through in or around February 2010, defendants **MARCELO HERRERA, CARLA CANTU HERRERA, RAMON DE LA GARZA,** and **BEATRIZ RAMOS** did, in connection with the delivery of and payment for health care benefits, items, and services, knowingly agree and devise, and intend to devise, a scheme or artifice to defraud the health care benefit programs known as Medicare and Texas Medicaid, and to obtain, money and property owned by, and under the custody and control of Medicare and Texas Medicaid, by means of materially false and fraudulent pretenses, representations, and promises. Thereafter, defendants **MARCELO HERRERA, CARLA CANTU HERRERA, RAMON DE LA GARZA,** and **BEATRIZ RAMOS** did knowingly and willfully execute, or attempt to execute, their scheme and artifice.  It was the plan and purpose of the scheme to mislead Medicare and Texas Medicaid into believing that the DME, including power wheelchairs, hospital beds and mattresses, diabetic supplies, and incontinence supplies, for which they had billed

Medicare and Texas Medicaid, had actually been provided to the Medicare and Texas Medicaid beneficiaries, and had been provided in accordance with the laws, rules, and regulations governing Medicare and Texas Medicaid; when in truth and fact, eighty (80) to ninety (90) percent of their billings to Medicare and Texas Medicaid were fraudulent because the bills were for DME that had not been prescribed or ordered by the beneficiaries' physicians; the DME was not medically necessary for the treatment of illness, injury, or condition of the beneficiaries; and/ or the DME had not been provided to the beneficiaries.  Defendants **MARCELO HERRERA, CARLA CANTU HERRERA, RAMON DE LA GARZA,** and **BEATRIZ RAMOS** also falsely and fraudulently represented, through the use of the KX modifiers in their bills, that the specific required documentation, such as the written physician order as described in paragraph 5 above, and the "Home Health Services (Title XIX) Durable Medical Equipment (DME)/Medical Supplies Physician Order Form" and the "DME Certification and Receipt Form." described in paragraph 18 above, were on file in the patient's medical record maintained by RGV DME.

30.     The manner and means defendants **MARCELO HERRERA, CARLA CANTU HERRERA, RAMON DE LA GARZA,** and **BEATRIZ RAMOS** used, or caused others to use, in furtherance of their conspiracy and scheme and artifice to defraud, and to accomplish their purposes and objectives, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court included or following, among others:

(a)     Defendants used "marketers" to solicit and obtain Medicare and Texas Medicaid identification numbers, medical information, and other personal identification, including the names of their physicians, from Medicare and Texas Medicaid beneficiaries; which information was recorded on "Referral" forms which the marketers then provided to defendants;

(b)     Defendants provided the marketers with gifts, or other things of value, to give the Medicare and Texas Medicaid beneficiaries to induce them to provide the information described in paragraph 30(a) above; and paid the marketers money for obtaining said information and for making the referrals;

(c)     Defendants used the information obtained from the marketers as described in paragraph 30(a) above, or obtained from other sources, to send billings or cause others to send billings for DME to Medicare and Texas Medicaid which were false and fraudulent for one or more of the following reasons:

    (1)     The DME was not medically necessary for and/or needed by the beneficiary;

    (2)     The physician listed as the referring provider on the billing claim form had never seen or examined the beneficiary;

    (3)     The physician listed as the referring provider on the billing claim form had never ordered or prescribed the DME;

    (4)     The physician listed as the referring provider on the billing claim from had refused to order or prescribe the DME;

    (5)     The DME was not delivered to the beneficiary before the billing claim form was submitted;

    (6)     The DME was never delivered to the beneficiary;

    (7)     The beneficiary was provided DME that was cheaper, and of a lower quality, than what was listed on the billing claim form;

    (8)     Payment was excluded by law because RGV DME did not have a written order from the beneficiary's physician prior to delivery of a wheelchair and prior to billing Medicare for the item;

    (9)     The defendants used the KX modifier on the billing claim form to represent that they had all of the required forms e.g. a written and signed order or prescription or Title XIX or DME Certification and Receipt Form when in fact defendants did not have all, or any, of the required documents, or none of said documents ever existed;

13

      (10)    The defendants forged signatures of physicians and beneficiaries on orders or prescriptions or Title XIX or DME Certification and Receipt Forms, and billing claim forms in order to hide, conceal or otherwise cover up their fraud;

      (11)    The defendants placed false diagnosis codes on the billing claim forms.

(d)    Defendants submitted or caused the submission of approximately 25,000 claims, totaling approximately $11 million dollars, to Medicare and Texas Medicaid, for DME allegedly provided to Medicare and Texas Medicaid beneficiaries;

(e)    For the purpose of executing their scheme or artifice to defraud, defendants transmitted or caused to be transmitted, by means of wire, radio, or television, in interstate commerce to CIGNA in Nashville, Tennessee, all or part of the claims described in paragraphs 30 (c) and (d) above;

(f)    Defendants caused Medicare and Texas Medicaid, as a result of the billings described in paragraphs 30 (c) and (d) above, to pay RGV DME, by paper checks delivered by the United States Postal Service, or by means of interstate wire transmissions, more than $7.1 million dollars;

(g)    Defendants billed, or caused others to bill Medicare and Texas Medicaid for DME allegedly supplied to beneficiaries who were dead at the time the DME was purportedly provided;

(h)    Defendants prevented Medicare and or Texas Medicaid beneficiaries from receiving medically necessary DME from other DME suppliers by billing or causing others to bill Medicare and Texas Medicaid for DME that was not delivered.  As a result of said billings the Medicare and or Texas Medicaid records reflected that the beneficiaries had already received the maximum permitted amounts of DME;

(I)    Defendants billed or caused others to bill to Medicare and Texas Medicaid for DME that was refused by the beneficiary;

(j)    Defendants used, or caused others to use, without authority, one or more means of identification of Medicare and Medicaid beneficiaries and or their physicians to commit health care fraud.

## COUNT ONE
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

31.    The Grand Jury incorporates by reference Paragraphs 1 through 30 above, including their subparagraphs, as though fully restated and re-alleged herein.

32.    Beginning in or around January 2004, and continuing through in or around February 2010, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, the defendants,

**MARCELO HERRERA**
**CARLA CANTU HERRERA**
**RAMON DE LA GARZA**
**and**
**BEATRIZ RAMOS**
Adeiana

in violation of Title 18 U.S.C. § 1349, did conspire and agree together and with persons known and unknown to the Grand Jury, to knowingly and willfully, execute or attempt to execute a scheme or artifice to defraud the health care benefit programs known as Medicare and Texas Medicaid, and to obtain by means of materially false and or fraudulent pretenses, representations, and promises, money and or property owned by, and under the custody and control of Medicare and Texas Medicaid, in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18 U.S.C. § 1347.  The object and purpose of the conspiracy was to unlawfully enrich themselves and or RGV DME, by improperly and or illegally obtaining, any of the money and or property owned by, or under the custody and control of Medicare and Texas Medicaid. The manner and means used by defendants **MARCELO HERRERA, CARLA CANTU HERRERA, RAMON DE LA GARZA,** and **BEATRIZ RAMOS** to effect the conspiracy was to unlawfully bill, or to cause others to unlawfully bill, Medicare and Texas Medicaid for medical benefits, items, or services which were: not provided and or improperly provided; and or unlawfully

arranged through payments to marketers, in violation of Title 42, U.S.C. § 1320a-7b(b)(2)(A); and/or

billed using one or more means of identification of one or more other persons in violation of Title

18 U.S.C. § 1028A.

The forgoing was in violation of Title 18, 1347 U.S.C. § 1349.

## COUNTS TWO through SEVEN
## HEALTH CARE FRAUD

33.    The Grand Jury incorporates by reference Paragraphs 1 through 30 above, including

their subparagraphs, as though fully restated and re-alleged herein.

34.    Beginning in or around January 2004, and continuing through in or around

February 2010, in the McAllen Division of the Southern District of Texas, and elsewhere within

the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, the defendants,

**MARCELO HERRERA**
**CARLA CANTU HERRERA**
**RAMON DE LA GARZA**
**and**
**BEATRIZ RAMOS**
*AdRiANA*

each aiding and abetting the other, in violation of Title 18, U.S.C. § 2 and Title 18, U.S.C. § 1347

did, knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health

care benefit programs known as Medicare and Texas Medicaid, and to obtain by false or fraudulent

pretenses, representations, or promises, any of the money or property owned by, or under the custody

or control of Medicare and Texas Medicaid, in connection with the delivery of, or payment for,

health care benefits, items, or services. In furtherance and in execution of their scheme and artifice,

defendants submitted, aided, abetted, counseled, commanded, induced, procured or otherwise

facilitated, or caused others to submit false and fraudulent claims to Medicare and Texas Medicaid

for medical benefits items and services which were not provided, or improperly provided including,

but not limited to the following:

16

| Count | Patient | Last Four Digits of patient's Medicare HCIN number | Last Four Digits of patient's Medicaid PCN number | Date of Alleged Service (On or about) | Date Billed (On or about) | Item Billed | Amount Billed | Amount Paid |
|-------|---------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| 2 | V.C. | 8805A | 8521 | 1/10/08 | 01/11/08 | Power wheelchair | $5,000.00 | $3,997.50 |
| 3 | H.M. | 0466A | 6977 | 1/18/08 | 01/21/08 | Power wheelchair | $5,000.00 | $3,997.50 |
| 4 | R.C. | 8243A | 1389 | 3/14/08 | 03/17/08 | Power wheelchair | $5,000.00 | $3,997.50 |
| 5 | L.G. | 706C5 | 7901 | 3/18/08 | 03/21/08 | Power wheelchair | $4,900.00 | $3,997.50 |
| 6 | I.R. | 2618A | 4233 | 9/05/08 | 09/09/08 | Air mattress and Hospital Bed | $950.00 | $632.95 |
| 7 | R.G. | Not On Medicare | 7888 | 7/03/09 | 07/03/09 | Incontinence Supplies | $382.00 | $271.68 |

The forgoing was in violation of  Title 18 U.S.C. § 1347 and Title 18 U.S.C. § 2

## COUNTS EIGHT THROUGH TWELVE
## FRAUD BY WIRE, RADIO, OR TELEVISION

35.     The Grand Jury incorporates by reference Paragraphs 1 through 30 above, including their subparagraphs, as though fully restated and re-alleged herein.

36.     Beginning in or around January 2004, and continuing through in or around February 2010, in the McAllen Division of the Southern District of Texas, and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, the defendants,

Case 7-12-cr-1036-4    Document 1    Filed in TXSD on 06/26/2012    Page 18 of 22

**MARCELO HERRERA**
**CARLA CANTU HERRERA**
**RAMON DE LA GARZA**
**and**
**BEATRIZ RAMOS**
*ADRIANA*

having devised and intended to devise any scheme and artifice to defraud, or for obtaining money or property of Medicare and or Texas Medicaid by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, U.S.C. § 2 and Title 18, U.S.C. § 1347 and in execution thereof, transmitted, or caused to be transmitted, by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds. In furtherance and in execution of their scheme and artifice, defendants submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated or caused others to submit, false and fraudulent claims by means of wire, radio, or television communication in interstate foreign commerce to Medicare through CIGNA in Nashville, Tennessee, including, but not limited to the following:

| Count | Patient | Fraudulent Billing Alleged In | Item Fraudulently Billed | Amount Of Fraudulent Bill | Fraudulent Billing Sent By Wire Or Radio Transmission To | Date Billed (On or about) |
|---|---|---|---|---|---|---|
| 8 | V.C. | COUNT 2 | Power wheelchair | $5,000.00 | CIGNA Nashville, Tennessee | 01/11/08 |
| 9 | H.M. | COUNT 3 | Power wheelchair | $5,000.00 | CIGNA Nashville, Tennessee | 01/21/08 |
| 10 | R.C. | COUNT 4 | Power wheelchair | $5,000.00 | CIGNA Nashville, Tennessee | 03/17/08 |
| 11 | L.G. | COUNT 5 | Power wheelchair | $4,900.00 | CIGNA Nashville, Tennessee | 03/21/08 |

| Count | Patient | Fraudulent Billing Alleged In | Item Fraudulently Billed | Amount Of Fraudulent Bill | Fraudulent Billing Sent By Wire Or Radio Transmission To | Date Billed (On or about) |
|-------|---------|------------------------------|--------------------------|---------------------------|-----------------------------------------------------------|---------------------------|
| 12 | I.R. | COUNT 6 | Air mattress and Hospital Bed | $950.00 | CIGNA Nashville, Tennessee | 09/09/08 |

The forgoing was in violation of Title 18 U.S.C. § 1343 and U.S.C. § 2

## COUNTS THIRTEEN THROUGH TWENTY-TWO
## AGGRAVATED IDENTITY THEFT

37.    The Grand Jury incorporates by reference Paragraphs 1 through 36 above as though fully restated and re-alleged herein.

38.    On or about the dates specified below, in the McAllen Division of the Southern District of Texas, and elsewhere within the jurisdiction of the Court, the defendants,

**MARCELO HERRERA**
**CARLA CANTU HERRERA**
**RAMON DE LA GARZA**
**and**
**BEATRIZ RAMOS**
*ADRIANA*

during and in relation to a felony violation of Title 18 U.S.C. § 1349 (as alleged in Count 1), and or Title 18 U.S.C. § 1347 (as alleged in Counts 2 through 6) and or Title 18 U.S.C. § 1343 (as alleged in Counts 8 through 12), did, in violation of Title 18 U.S.C. § 1028A and Title 18 U.S.C. § 2, knowingly transfer, possess or use, without lawful authority, a means of identification of another person, that is, a Medicare/Texas Medicaid beneficiary's name and personal information or Health Insurance Claim Number (HICN), or Patient Control Number (PCN); or a name or Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI") of a physician for said Medicare/Texas Medicaid beneficiary, including but not limited to the following:

19

Case 7-12-cr-1036-4    Document 1    Filed in TXSD on 06/26/2012    Page 20 of 22

## PATIENTS

| Count | Patient Whose identity was unlawfully used | Identity Unlawfully Used For | Item Fraudulently Billed | Amount Of Fraudulent Bill | Date Billed (On or about) |
|---|---|---|---|---|---|
| 13 | V.C. | Fraudulent billing COUNT 2 | Power wheelchair | $5,000.00 | 01/11/08 |
| 14 | H.M. | Fraudulent billing COUNT 3 | Power wheelchair | $5,000.00 | 01/21/08 |
| 15 | R.C. | Fraudulent billing COUNT 4 | Power wheelchair | $5,000.00 | 03/17/08 |
| 16 | L.G. | Fraudulent billing COUNT 5 | Power wheelchair | $4,900.00 | 03/21/08 |
| 17 | I.R. | Fraudulent billing COUNT 6 | Air mattress and Hospital Bed | $950.00 | 09/09/08 |

## PHYSICIANS

| Count | Physician whose identity was unlawfully used and last four digits of Physician's UPIN or NPI | Identity Unlawfully Used For | Item Fraudulently Billed | Amount Of Fraudulent Bill | Date Billed (On or about) |
|---|---|---|---|---|---|
| 18 | R.D.D. 2014 | Fraudulent billing COUNT 2 | Power wheelchair | $5,000.00 | 01/11/08 |
| 19 | A.C. 3963 | Fraudulent billing COUNT 3 | Power wheelchair | $5,000.00 | 01/21/08 |

Case 7-12-cr-1036-4    Document 1    Filed in TXSD on 06/26/2012    Page 21 of 22

| Count | Physician whose Identity was unlawfully used and last four digits of Physician's UPIN or NPI | Identity Unlawfully Used For | Item Fraudulently Billed | Amount Of Fraudulent Bill | Date Billed (On or about) |
|---|---|---|---|---|---|
| 20 | R.S. 2014 | Fraudulent billing COUNT 4 | Power wheelchair | $5,000.00 | 03/17/08 |
| 21 | S.L. 9849 | Fraudulent billing COUNT 5 | Power wheelchair | $4,900.00 | 03/21/08 |
| 22 | N.K. 8107 | Fraudulent billing COUNT 6 | Air mattress and Hospital Bed | $950.00 | 03/09/08 |

The forgoing was in violation of Title 18 U.S.C. § 1028A and Title 18 U.S.C. § 2

## NOTICE OF FORFEITURE

As a result of each of the foregoing violations of Title 18 U.S.C. § 1347, and/or Title 18

U.S.C. § 1349, and/or Title 18 U.S.C. § 2, and/or Title 18 U.S.C. § 1343, defendants,

**MARCELO HERRERA**
**CARLA CANTU HERRERA**
**RAMON DE LA GARZA**
**and**
**BEATRIZ RAMOS**

shall forfeit to the United States pursuant to Title 18 U.S.C. § 982(a)(7), all property, real or

personal, that constitutes or is derived, directly or indirectly from gross proceeds traceable to the

commission of the offenses including, but not limited to, a sum of money equal to the amount of

proceeds obtained as a result of the offenses alleged in Counts 1 through 12 for which defendants

are jointly and severally liable.

It is the intent of the United States pursuant to Title 21 U.S.C. § 853(p), as incorporated

by Title 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above if any of the above-described forfeitable property, as a result of any act or omission of a defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

Rex G. Beasley
SPECIAL ASSISTANT UNITED STATES ATTORNEY